## COURT OF APPEALS,

### Feb. 3, 1914.

## THE PEOPLE v. WILLIAM D. PINDAR.

### (210 N. Y. 191.)

(1.) INDICTMENT*—WILL NOT BE DISMISSED FOR ERRORS OR MISTAKES WHICH DO NOT PREJUDICE THE DEFENDANT—CODE CRIM., § 684.

Under the provision of the statute (Code Crim. Pro. § 684) it is not error to deny a motion to dismiss an indictment for error or mistake which did not prejudice the defendant. An indictment, open to criticism as to form, upheld as charging the crime of larceny, under section 1293 of the Penal Law.

(2.) APPEAL—ALLEGED ERRORS WHICH HAVE NOT BEEN POINTED OUT BY EXCEPTIONS CANNOT BE CONSIDERED BY THE COURT OF APPEALS EXCEPT IN CAPITAL CASES.

Except in cases where the judgment under review is one of death, the jurisdiction of the Court of Appeals is confined to the consideration of errors which have been pointed out by proper exceptions on the record; and, hence, the court cannot consider questions asked by the district attorney in cross-examining a defendant charged with larceny, although not justifiable and calculated to harm defendant, where no objections thereto were interposed by counsel for defendant and no rulings made by the court; nor can this court consider the alleged misconduct of the district attorney, in summing up, where defendant's counsel merely except to two of the statements made by him, but made no request to the court either to withdraw a juror or to give any instruction in regard to the statements alleged to be objectionable.

(3.) SAME.

Alleged errors in the admission of evidence against defendant, and in the exclusion of evidence offered by defendant examined,

---

* See Notes on Indictment, v. 14, p. 174; v. 22, p. 454; Amendment of Indictment, v. 24, p. 169; Demurrer to Indictment, v. 29, p. 238.

and *held*, that the evidence admitted was harmless because cured by later testimony and that the evidence excluded upon the question of intent was properly rejected because it tended to prove a contemplated, not an actual, restitution.

*People* v. *Pindar*, 159 App. Div. 12, affirmed.

(Argued January 7, 1914; decided February 3, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 18, 1913, which affirmed a judgment of the Otsego County Court rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree.

The facts, so far as material, are stated in the opinion.

*Nash Rockwood* for appellant. The facts of this case do not make out the crime of larceny, either at common law or under the statute, and the conviction cannot be sustained. (Soltau v. Gardeau, 48 Hun, 537; 119 N. Y. 380; Zink v. People, 77 N. Y. 114; People v. Dilcher, 38 Misc. Rep. 89; Bassett v. Spofford, 45 N. Y. 387; Thorne v. Truck, 94 N. Y. 90; People v. Morse, 99 N. Y. 662; People v. Hughes, 91 N. Y. 354; People v. Summer, 33 App. Div. 338, 161 N. Y. 652; People v. Dumar, 106 N. Y. 502; People v. Miller, 169 N. Y. 339.) The motion to dismiss the second count of the indictment, made at the opening of the People's case, should have been granted. (Ex parte Bank of Monroe, 7 Hill, 177; Cunningham v. Goelar, 4 Den. 71; Ex parte Aldrich, 1 Den. 71; People *ex rel.* Wysman v. Johnson, 1 T. & C. 578; Manton v. Poole, 4 Hun, 638; Manton v. Poole, 67 Barb. 350; People v. Bough, 16 N. Y. S. R. 18; People v. Winner, 80 Hun, 130; People v. Livingston, 47 App. Div. 283.) The court erred in permitting the district attorney to ask improper questions and to make improper and prejudicial statements before the jury. (People v. Freeman, 203 N. Y. 267; People v. Ford, 200 N. Y.

209; People v. Conroy, 200 N. Y. 356; People v. Callahan, 151 App. Div. 666; Hoyt v. Davis Mfg. Co., 112 App. Div. 759; People v. Collier, 141 App. Div. 111; People v. Bills, 129 App. Div. 800; People v. Friori, 123 App. Div. 174; People v. Scanlon, 132 App. Div. 528; People v. Springer, 137 App. Div. 304; People v. Acarbo, 140 App. Div. 929; People v. Decker, 143 App. Div. 590.) It was error for the court to permit Talmadge to testify that he had made good the check to the Schenevus Bank, and then to refuse to permit the defendant to show that he had endeavored to make restitution to Talmadge. (18 Am. & Eng. Ency. of Law, 510; Georgia v. Kefford, 45 Iowa, 48; White v. State, 23 Tex. App. 643; Sigler v. State, 7 Tex. App. 283.) This being an appeal from a judgment of conviction in a criminal case, specific exceptions were not necessary to bring before this court for review erroneous rulings and decisions in the progress of the trial. (People v. Kathan, 136 App. Div. 304.)

*Orange L. Van Horne, District Attorney*, for respondent. There was ample proof to sustain the charge of grand larceny as set forth in the indictment, and the verdict of the jury was in accordance with the evidence on the trial. (People v. Huggins, 110 App. Div. 613; Lesser v. People, 12 Hun, 668; 73 N. Y. 78; Sieling v. Clark, 18 Misc. Rep. 466; Coursey v. Morton, 132 N. Y. 556; Smith v. People, 47 N. Y. 303; Foote v. People, 17 Hun, 218; People v. Pinckney, 67 Hun, 428.) The trial court properly denied the motion to dismiss the second count of the indictment. (People v. Willis, 158 N. Y. 392; People v. Lammert, 164 N. Y. 144; People v. Alderdice, 120 App. Div. 368; People v. Williams, 149 N. Y. 1.)

WILLARD BARTLETT, Ch. J. The evidence in this case warranted the jury in finding that in the month of February,

1912, the defendant at Schenevus, in Otsego county, obtained $1,200 in money from one George L. Talmadge by means of a check purporting to have been drawn by one William M. Fleitmann on the Mutual Bank in the city of New York when the defendant knew that the check had not been signed by Mr. Fleitmann or with his authority, and that the drawer thereof was not entitled to draw on the Mutual Bank for the payment of the amount called for by the check. For this act the defendant was indicted for the crime of grand larceny in the first degree under section 1293 of the Penal Law. There were two counts in the indictment. The first count was dismissed upon the motion of the defendant who was tried upon the second count only.

The principal question litigated upon the trial was whether the defendant was authorized by William M. Fleitmann to sign the check in question in Fleitmann's name. It appeared that the defendant, a married man who had separated from his wife and children, had been living on terms of intimacy with a woman variously known as A. Moreska or Norosa Wayt, who was a professional singer with an ambition to go upon the stage. Mr. Fleitmann was acquainted with this woman and according to the testimony of the defendant had promised to assist her toward the production of a vaudeville act by advancing to her the sum of $5,000. On several occasions when Mr. Fleitmann called upon Moreska in the rooms occupied by her and the defendant, the defendant hid himself—once in a closet and once under a folding bed—in order to overhear what was said between them. In this way and presumably by conversations with the woman herself the defendant claims to have become informed of the alleged promise by Mr. Fleitmann to provide the money desired by Moreska for her vaudeville enterprise. The defendant, however, did not disclose to Mr. Fleitmann his relations with the woman or even the fact of his existence until

the occasion when he claims to have been authorized to sign the check in question. This was at the time of a visit by Mr. Fleitmann to Moreska in their apartments, when the defendant entered the room and said to Mr. Fleitmann without the pre-liminary of any introduction· that he was representing Miss Norosa and wanted to know why Mr. Fleitmann could not pay the $5,000 he had promised her and let her put on her vaude-ville act. According to the defendant, after considerable con-versation in the course of which Mr. Fleitmann said he was a man with a wife and children and would have to safeguard him-self a little, he expressly authorized the defendant to act as his agent and draw in his name four checks for amounts aggre-gating $5,000, making them payable to the order of Mrs. William M. Fleitmann; and the defendant testified that Mr. Fleitmann also at the same time gave Miss Norosa authority to indorse his wife's name on the check in order to obtain the money. The defendant took one of these checks, for $2,000, to his friend, Mr. Talmadge, to whom he was indebted in an amount somewhat exceeding $700, and obtained from him $1,200 thereon as has already been stated.

· Mr. Fleitmann, who was called as a witness for the People, denied that he knew the defendant or any woman by the name of Moreska, or that he ever authorized any one to sign his name to the check in question or ever had any account with the Mutual Bank upon which the check was drawn. Further on in the case, however, he admitted an acquaintance with the Moreska woman, but only under the name of Norosa.

The draftsman to whom the district attorney of Otsego county intrusted the preparation of the indictment in this case produced an exceedingly slovenly and ungrammatical plead-ing; but having regard to the provision in section 684 of the Code of Criminal Procedure to the effect that no error or mis-take in any criminal pleading is to be deemed to invalidate

it unless the defendant has been thereby prejudiced, we agree with the learned Appellate Division that the indictment may be upheld under section 1293 of the Penal Law, and, therefore, conclude that there was no error in denying the defendant's motion to dismiss the second count.

The absence of exceptions to many of the rulings assailed upon this appeal precludes us from considering some of the points presented in behalf of the appellant upon which his learned counsel apparently relies most confidently. For example, he complains and with good reason of the questions put to his client upon cross-examination whereby the district attorney endeavored to show that the defendant was a cousin of Francis Burton Gibson. " It was common knowledge at the time of the trial in October, 1912," says counsel for the appellant, " that one Francis Burton Gibson was under a charge of murder in the first degree and the case excited wide attention in the newspapers and a tremendous amount of public comment. The purpose of the district attorney in asking Pindar if he was related to Gibson was therefore clear. He wanted to prejudice Pindar with the jury, if possible, and besmirch his good name." The district attorney insists that this line of questioning was justifiable by reason of the fact that defendant on his direct examination had been questioned as to the prosperity and business ability of some members of the Pindar family. We think this did not excuse the manifest attempt to harm the defendant by an attempt to prove that he was related to a man accused of murder. But, however this may be, the error, if it was one, is not cognizable in this court on the present appeal. Except in cases where the judgment under review here is one of death our jurisdiction is confined to the consideration of errors which have been pointed out by proper exceptions on the record. (People v. Sherlock, 166 N. Y. 180; 15 N. Y. Crim. 412.) No objections were interposed to the questions put to

the defendant concerning his relationship to Francis Burton Gibson, and, therefore, of course, there were no rulings by the court to which exception could be taken.

The learned counsel for the appellant also complains with much earnestness of some of the statements made by the district attorney during his summing up to the jury. At the conclusion of the address he excepted to two of these statements, but he made no request to the judge either to withdraw a juror or to give any instructions to the jury in regard to the statements alleged to be objectionable. The law does not contemplate exceptions to the conduct of counsel; exceptions may properly be taken only either to the action of the court in doing or refusing to do something requested by counsel. In a capital case the Court of Appeals possesses authority to reverse for the misconduct of a public prosecutor in summing up, since we have plenary power in reviewing judgments of death and no objections or exceptions are necessary to enable us to consider any matter tending to show that the defendant in such a case has been deprived of a fair trial. As has already been pointed out, however, our jurisdiction in other criminal cases is much more restricted; and in the case at bar the alleged misconduct of the district attorney in summing up is not so presented as to enable us to take cognizance thereof.

Upon cross-examination of Mr. Fleitmann, when he was called as a witness for the People, the trial judge restricted the defendant's counsel to questions relating to points upon which the district attorney had examined the witness, saying that he would allow the defendant to recall him but that of course the defendant would make him his own witness in respect to any new matter. An exception was duly taken to this ruling. We think the court was too strict in thus limiting counsel and that he should have been allowed to cross-examine the witness then and there as fully as he apparently desired. Mr. Fleitmann,

however, was recalled as a witness for the defense and testified fully and rather helpfully to the defendant so far as his cross-examination touched any matters not covered when he was examined as the People's witness. Under these circumstances we think that the defendant suffered no harm by reason of the action of the court in limiting the cross-examination. It was undoubtedly error in the first instance to sustain the district attorney's objection to the question whether Mr. Fleitmann had ever gone by the name of Foster; but this error was cured by his subsequent testimony to the effect that he had called himself Foster when he first made the acquaintance of Miss Norosa before he knew positively who she was and that she lived in a very respectable house.

The only other point which we deem it necessary to notice is the contention in behalf of the appellant that he was unduly deprived of the opportunity to prove that he had made restitution as bearing upon the intent with which he procured the check in question to be cashed. He was allowed to testify fully to all that he had actually done in the direction of making restitution. The proof which was excluded was testimony to the effect that he had instructed his attorney to do something more. We think it would be going too far to hold that restitution merely contemplated and not carried into effect could be considered by the jury upon the question of the defendant's intent.

Without discussing the other points presented in the brief for the appellant it is enough to say that we think no legal error was committed upon the trial which was harmful or could have prejudiced his rights, and we, therefore, conclude that the judgment of conviction must be affirmed.

WERNER, HISCOCK, CHASE, COLLIN, CUDDEBACK and MILLER, JJ., concur.

Judgment of conviction affirmed.