## COURT OF APPEALS.

### April 6, 1917.

## THE PEOPLE v. GEORGE MINKOWITZ.

#### (220 N. Y. 399.)

(1). TRIAL—DEFENDANT SHOULD NOT BE ASKED, IN PRESENCE OF A JURY, TO PRODUCE AN INCRIMINATING DOCUMENT.

A demand should not be made in the presence of a jury for a defendant to produce an incriminating document which appears to be in his possession, and there is no distinction between making a demand upon the defendant and making a demand upon the defendant's lawyer in his presence and in the presence of the jury. When a lawyer has received a defendant's papers from the defendant after retainer as his attorney he cannot be called upon to produce them in court.

(2). APPELLATE DIVISION MAY REVERSE A CONVICTION UNDER THE STATUTE (CODE CRIM. PRO., § 527) IN THE ABSENCE OF OBJECTION OR EXCEPTION, AND THE COURT OF APPEALS CANNOT INTERFERE.

The Appellate Division may reverse a conviction under section 527 of the Code of Criminal Procedure for substantial error committed on the trial though no objection was made or exception taken, and this court cannot interfere. (People v. Pindar, 210 N. Y. 191; People v. Hartigan, 210 N. Y. 144, 148, distinguished.)

(3). WHEN CONVICTION OF DEFENDANT SHOULD BE REVERSED FOR IMPROPER REMARK OF DISTRICT ATTORNEY IN SUMMING UP.

The conviction of a defendant should be reversed for an improper remark made by the district attorney in summing up with regard to the failure of defendant to be sworn as a witness where the court failed on request of defendant's counsel to direct the jury to disregard it.

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1916, which reversed a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of criminally receiving stolen property and granted a new trial.

The facts, so far as material, are stated in the opinion.

*Harry E. Lewis, District Attorney (Ralph E. Hemstreet* of counsel), for appellant. No error was committed by the court below or by the district attorney in asking Mr. Martin, the defendant's counsel, whether he had produced the papers in question; or in the examiantion of Mr. Conway or Mr. Martin as to the return of those papers to Mr. Martin as attorney for Silverman. (People v. Dolan, 186 N. Y. 4; Comm. v. Messinger, 1 Binn. 273; People v. Holbrook, 13 Johns. 90; People v. Becker, 215 N. Y. 126; United States v. Britton, 2 Mason, 464; Boyd v. United States, 116 U. S. 616; Comm. v. Robinson, 146 Mass. 571; People ex rel. Taylor v. Forbes, 143 N. Y. 219; People ex rel. Ferguson v. Reardon, 197 N. Y. 236; People v. Coombs, 36 App. Div. 284, 158 N. Y. 532.)

*Isaac N. Jacobson,* for respondent. The respondent's constitutional rights were violated, in that he was compelled to be a witness against himself. (People v. Gibson, 218 N. Y. 70; People ex rel. Ferguson v. Reardon, 197 N. Y. 236; People v. Coombs, 158 N. Y. 532; Crane v. Bennett, 177 N. Y. 112; People ex rel. Taylor v. Forbes, 143 N. Y. 219; Counselman v. Hitchcock, 142 U. S. 547.)

CRANE, J.:

On February 7th, 1915, the manufactory of Ike Lipshitz at No. 441 Blake avenue, Brooklyn, N. Y., where he conducted the business of manufacturing shirt waists, was broken into and thirteen sewing machines stolen. On the following day some of these machines were found at No. 434 West Broadway, New York City, in the premises of the defendant, George Minkowitz, where he conducted a second-hand sewing machine business. Two of these machines thus found were of Wilcox & Gibbs' make, bearing underneath on the bed-plate the serial numbers, L. 59,421 and L. 67,854. These numbers were included in an inventory made by Ike Lipshitz of his property sometime before the burglary.

Alexander Silverman and George Minkowitz, the defendant, together with others, were indicted for burglary in the third degree, grand larceny in the first degree, and for criminally receiving stolen property. The two defendants above named appeared by the same attorney, Mr. Martin, of Kings county, and demanded separate trials. Silverman was the first to be placed upon trial on October 14, 1915, and was convicted. George Minkowitz appeared as a witness for Silverman upon his trial and testified that the two Wilcox & Gibbs machines, found in his place as above stated, had been purchased by him from Lille & Brodowsky on March 22, 1913, and he produced a receipted bill of that date purporting to contain the numbers upon the face of the machines. The numbers above given were upon the bed-plate, but there were other numbers upon the face of the machines. These face numbers were L. 59,824 and L. 69,858. When the police took away the machines from Minkowitz's place he hurriedly made a note upon the back of one of his business cards of these face numbers. In his hurry he copied the number L. 59,824 as L. 59,284. Upon the receipted bill which he produced of Lille & Brodowsky of March 22, 1913, the number of the Wilcox & Gibbs machine purchased is given as L. 59,284. It was a reasonable presumption that this number had been inserted in the receipted bill by copying the number from the card, and that this mistake indicated that the receipt, so far as this number was concerned, and L. 69,858, was a falsity and was prepared for the purpose of deceiving. There were other indications upon the face of the receipted bill which also led to the conclusion that these two numbers had been inserted at a later time than March 22, 1913.

Upon the Silverman trial this receipted bill, the business card upon which the numbers were placed by the defendant and the check for the payment of the bill drawn by George Minkowitz to the order of Lille & Brodowsky for $153, were offered and received in evidence as Exhibits A, B and No. 8. These

papers were produced by George Minkowitz from his possession and after the trial were returned to his lawyer, Mr. Martin, who gave a receipt therefor.

On May 15th, 1916, this defendant, George Minkowitz, was placed upon trial in the County Court of Kings county, being represented and defended by his attorney, Mr. Martin, the same lawyer who defended Silverman.   The People introduced in evidence the testimony of Minkowitz, as given by him upon the trial of Silverman, wherein it appeared that the above papers were offered in evidence.   The district attorney had served a *subpœna duces tecum* upon the defendant's lawyer, Mr. Martin, to produce these papers upon this trial of Minkowitz, and during the trial and in the presence of the jury, he said: "At this time, I desire to call upon Mr. Martin, the attorney for Alexander Silverman, alias Abe Silverfine, to produce the two exhibits, defts. Exhibit A and defts. Exhibit B, which were used upon that trial, and People's exhibit # 8.   I have served Mr. Martin with a notice to produce those exhibits as attorney for Silverman.   Have you produced them, Mr. Martin?

"Mr. Martin: The defendant refuses to produce any exhibits that belonged to him on the trial of Silverman on the ground that it compels him to testify against himself."

Thereupon Mr. Martin was called to the stand by the district attorney and, over objection, compelled to testify that the exhibits were offered in evidence at the Silverman trial and that thereafter they were returned to him and that he signed a receipt therefor.   Further, he was compelled to answer that he had been served with a notice to produce these papers upon the then pending trial of George Minkowitz, whom he was defending, the examination concluding with the question and answer: "Q. Have you produced those exhibits today?   A. I have not." It appears that all these papers were originally in the possession of the defendant Minkowitz, and were given to his lawyer after

he had been retained, and while the relationship of attorney and client existed.

Under these circumstances the possession of the lawyer was the possession of the defendant. To ask the attorney in the presence of the jury to produce the papers and then to call him to the stand to testify about them and to declare his refusal to produce them was a practice condemned by this court in People v. Gibson (218 N. Y. 70). In the briefs submitted for the People is this statement: "We agree that a demand should not be made in the presence of a jury for the defendant to produce an incriminating document which appears to be in his possession." This court fails to appreciate the distinction between making a demand upon the defendant and making a demand upon the defendant's lawyer in his presence and in the presence of the jury. The evil effect is the same in both instances.

And this play before the jury was entirely unnecessary in order to accomplish the purpose given by the prosecutor for his procedure. He stated that it was to lay a foundation to introduce secondary evidence of the exhibits. It was very easy to prove by others or by the receipt that they were in the possession of the defendant's lawyer or the defendant. This would be sufficient to justify secondary evidence.

We do not say, neither do we decide, that in every case a lawyer who appears for a defendant in a criminal action may not be compelled to produce, by *subpœna duces tecum,* papers which he has in his possession and which are necessary for the prosecution; but we do say that when a lawyer has received the defendant's papers from the defendant after his retainer as such attorney he cannot be called upon to produce them in court.

Some of my associates are of the opinion that the objections made by the defendant's counsel to the questions put to him by the prosecutor would be insufficient to present the errors to this court if we were reviewing an affirmance by the Appellate Division. (People v. Pindar, 210 N. Y. 191; People v. Harti-

gan, 210 N. Y. 144, 148.) That court, however, has reversed the conviction upon the ground that the rule laid down in People v. Gibson (*supra*) had been violated, and it could do so under section 527 of the Code of Criminal Procedure without objection being made or exception taken. As substantial error was committed upon the trial in this particular, we cannot interfere where the Appellate Division has acted within its power.

The defendant in this case did not take the stand, and the seriousness of the methods resorted to by the district attorney, as above detailed, are accentuated by his summing up. He addressed the jury as follows:

" Don't you think the reason he did not put Minkowitz upon the stand was because he might be asked about these exhibits?

" Mr. Martin: I object to the statement of the District Attorney, and I ask your Honor to instruct the jury to disregard it.

" The Court: Denied.

" Mr. Martin: I except.

" Mr. Conway: Don't you know that is the reason? You know these exhibits that I am talking about are the *defendant Minkowitz's* exhibits produced on another trial and produced by him.   *   *   *   Don't you think the reason Mr. Martin did not put him upon the stand was because he did not want him asked for those exhibits so that you might see them? "

Section 393 of the Code of Criminal Procedure provides: " The defendant in all cases may testify as a witness in his own behalf, but his neglect or refusal to testify does not create any presumption against him." The practice of prosecuting attorneys in making such references as this to the failure of the defendant to take the stand has been repeatedly condemned. (Ruloff v. People, 45 N. Y. 213; People v. Rose, 52 Hun, 33, 39; People v. Valentine, 147 App. Div. 31; People v. Hoch, 150 N. Y. 291, 304; People v. Springer, 137 App. Div. 304; People v. Watson, 216 N. Y. 565; Dunn v. State, 118 Wis. 82,

87; Wilson v. U. S., 149 U. S. 60, 66, 67, 70; Commonwealth v. Scott, 123 Mass. 239, 240, 241; Austin v. People, 102 Ill. 261, 264.) In some of the above cases such improper remarks of the district attorney were held not to be error calling for a reversal of the conviction where the trial court instructed the jury to disregard such statements and did everything possible to arrest their influence with the jury. In this case, however, the trial judge not only sustained, by his ruling, the district attorney in this line of argument, but never again referred to the subject. In no part of his charge did he refer to such improper remarks.

We, therefore, conclude that for all of the reasons above stated the Appellate Division was justified in reversing the judgment of conviction and granting a new trial.

When this defendant is again tried, if the count of receiving stolen property is submitted to the jury, we think the trial judge should charge the degrees of this crime, pursuant to section 1308 of the Penal Law, as amended by chapter 366 of the Laws of 1916.

The judgment of the Appellate Division reversing the judgment of conviction of the County Court and granting a new trial should be affirmed.

HISCOCK, Ch. J., CHASE, HOGAN, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgment affirmed.