THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. FRANCES GEIB, Appellant.

Fourth Department, January 27, 1943.

*Wortley B. Paul* and *Edward J. Elsaesser* for appellant.

*Leo J. Hagerty, District Attorney* (*Maurice Frey* of counsel), for respondent.

CROSBY, P. J.  Defendant has been convicted of the crime of abortion as defined by section 80 of the Penal Law.  The com-

plaining witness testified that her husband had been in Attica State Prison for a period of about eight or nine months when she became pregnant through adulterous intercourse; that she was receiving support for herself and her two children from the Public Welfare Department, and that an agent of that Department told her that she was to be deprived of her welfare allowance because of her misconduct.

She further testified that she went to the home of defendant at 169 Esser street in the city of Buffalo, and that defendant performed an abortion on her by giving her some kind of a douche, the nature of which she did not know. She became ill and was taken to a hospital where a doctor treated her by curettage. The doctor gave the opinion that she had suffered an abortion. The doctor expressed doubt that an abortion could be produced by any kind of a douche that would not destroy tissue. There is no evidence in the record that tissue was destroyed.

It is not a matter of consequence that defendant lived at 129 Esser street instead of 169, for complainant stated that she was not sure of the number. Defendant denied having ever had anything to do with complainant other than to wait on her at a restaurant in which defendant worked as a waitress.

The record presents a close case, and we think there should be a reversal of the judgment of conviction and a new trial, for reasons now pointed out.

Upon direct examination the complainant was asked the question: "Had you heard about Mrs. Geib before?" Under objection, by defendant's counsel, she answered: "Yes." Then this question was asked: "And that is how you happened to go to her home, is that correct?" Again, under defendant's objection, the witness answered: "Yes."

This testimony could have no other purpose than to show to the jury that defendant was reputed and spoken of as a person who performed abortions. Defendant was being tried for a single act of abortion, not for her reputation as a person who performed abortions. (See *People* v. *Hinksman,* 192 N. Y. 421; *People* v. *Richardson,* 222 N. Y. 103.)

Furthermore another of the people's witnesses, a policeman who arrested defendant, was permitted, under objection, to testify that he asked defendant if she wished to make a statement, and that she stated that she was not so foolish as to make a statement, adding: "I made a statement the last time I was arrested." Thus she found herself on trial for some crime of which she was given no notice by the indictment in this case. (See *People* v. *Springer,* 137 App. Div. 304.)

The last witness was also permitted, under objection, to testify that, after defendant had been taken to the hospital for the purpose of having the complainant identify her as the one who had performed the abortion, the complainant and defendant said nothing to each other, but, after defendant was taken from the room, and out of hearing, the complainant said to the policeman: " That was the woman that —." The witness was interrupted at that point, but the hearsay evidence had been given. This was clearly error, and it was not cured by the court's remark: " He didn't complete his answer."

Attention has been called to what we deem to be errors of law. Another thing in the record presents a matter of importance. The complainant was asked whether or not she had been " threatened " by the police. She answered: " Well, they just told me if it was not Mrs. Geib I would get in trouble." There is no doubt of what she meant. She reiterated the statement after it was made plain to her what was being asked. She had been threatened with the loss of her welfare aid; she was the wife of a convict; she had a great many things to worry about, and according to her own testimony, given as the chief witness for the People, she was told that her own safety depended upon her charging this defendant with the crime.

The judgment of conviction and order should be reversed and a new trial granted.

All concur. Present — CROSBY, P. J., CUNNINGHAM, DOWLING, HARRIS and McCURN, JJ.

Judgment of conviction and order reversed on the law and facts and a new trial granted.